IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| VALERIE MARES and IAN TREW, <br><br> On behalf of Plaintiff and Class, <br><br> v. <br><br> OUTSOURCE RECEIVABLES MANAGEMENT, INC, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER** <br><br><br> Case No. 1:19-cv-0004 <br><br> District Judge Dee Benson |

Before the court is Defendant Outsource Receivables Management's Motion to Dismiss for Failure to State a Claim. (Dkt. No. 5.) The Motion has been fully briefed by the parties and the court has considered the arguments in those filings. Pursuant to Civil Rule 7-1(f) of the U.S. District Court for the District of Utah Rules of Practice, the court elects to determine the motion on the basis of the written memoranda and finds that oral argument would not be helpful or necessary. DUCivR 7-1(f).

## BACKGROUND

Plaintiffs Valerie Mares and Ian Trew reside in the State of Utah. (Dkt. No. 2-2 at 4.) Defendant Outsource is a Utah corporation that purchases consumer debts in default to pursue collection of the debts. (*Id.*) This action arises out of Defendant's September 5, 2018 state court collection action against Plaintiffs to collect on a debt incurred by Ms. Mares for dental services she received at Hillfield Pediatric & Family Dentistry. (Dkt. No. 14 at 2.) After Hillfield assigned Ms. Mares' account to Defendant for collection, Defendant filed suit against Ms. Mares, as well as Mr. Trew pursuant to Utah's family expense doctrine, Utah Code Ann. § 30-2-

9,[1] based on Defendant's belief that Trew was Mares' husband. (*See* Dkt. No. 5 at 1; Dkt. No. 14 at 3.)[2] After Defendant initiated the collection action, Mares paid the debt. (Dkt. No. 5 at 1.) Plaintiffs then brought this action claiming that by seeking to collect the debt from Mr. Trew, Defendant violated the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.* ("ECOA"), and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA").

In their Opposition brief, Plaintiffs assert that "Mr. Trew has never been legally married to Ms. Mares and was never a party to the credit agreement" but rather that they "are in a long-term relationship . . . ." (Dkt. No. 14 at 1, 16.) While this statement conflicts with numerous allegations found in Plaintiffs' Complaint,[3] the court accepts it as true for purposes of this motion.

## DISCUSSION

Under Rule 12(b)(6), the court must accept all well-pleaded allegations in the Complaint as true and construe those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards Training*, 265 F.3d 1144, 1149 (10th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 554 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial

---

[1] Utah Code Ann. § 30-2-9 imposes liability on each spouse for family expenses incurred by the other spouse, including allowing for collecting one spouse's delinquent or defaulted debt from the other spouse.

[2] Defendant provided the court with a copy of the Hillfield General Information form that Mares filled out when she sought credit for her dental work from Hillfield, and where she represented to Hillfield that Ian Trew is her "spouse[.]" (Dkt. No. 15-1.)

[3] For instance, Plaintiffs' Complaint alleges that "Mr. Trew is a 'consumer' as defined by 15 U.S.C. § 1692a(3), a nonreceiving ***spouse*** of the medical treatment . . . and a non-contracting ***spouse*** for the medical treatment . . ." Compl., ¶ 14 (emphasis added). Additionally, Plaintiffs allege that Defendant attempted "to force Mr. Trew to be an applicant for the obligation incurred by Ms. Mares for the medical services provided, simply because she is married to him." *Id.* ¶ 43. However, the Complaint also conflictingly alleges that "[b]y falsely representing that Mr. Trew was married to Ms. Mares and that he owes the debt, Defendant made a false representation of the character and legal status of the debt . . . ." *Id.* ¶ 63.

2

plausibility when pleaded factual content allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Id.*

I.   **Equal Credit Opportunity Act Claim**

The ECOA prohibits creditors from discriminating against any credit applicant "with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex, or marital status." 15 U.S.C. § 1691(a)(1). The ECOA defines an "applicant" as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." *Id.* § 1691a(b). Accordingly, "the plain language of the ECOA unmistakably provides that a person is an applicant only if she requests credit." *Alexander v. AmericPro Funding, Inc.*, 848 F.3d 698, 707 (5th Cir. 2017). Furthermore, a "creditor" is "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit." 15 U.S.C. § 1691a(e).

In accordance with the ECOA's authorization for the Federal Reserve Board to prescribe regulations "to carry out the purposes" of the ECOA, the Federal Reserve implemented Regulation B to help interpret and apply the ECOA, and to clarify which specific discriminatory conduct falls within its scope. 15 U.S.C. § 1691b; 12 C.F.R. §§ 202.1, *et seq.*; *RL BB Acquisition v. Bridgemill Commons Dev. Grp.*, 754 F.3d 380, 383 (6th Cir. 2014). Regulation B accordingly aims in part "to promote the availability of credit to all creditworthy applicants without regard to . . . sex [or] marital status . . . [and] prohibits creditor practices that discriminate on the basis of any of these factors." 12 C.F.R. § 202.1(b). In addition to this

general prohibition of discrimination in creditor practices based on marital status, Regulation B also includes a "Spouse-Guarantor Rule" which states that "a creditor shall not require the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested." 12 C.F.R. § 202.7(d)(1).

To survive a motion to dismiss regarding the alleged violation of the ECOA's general discrimination prohibition, Plaintiffs must plead allegations of fact that (1) they are members of a protected class; (2) they applied for and were qualified for a loan; (3) the loan application(s) was rejected despite their qualifications; and (4) the creditor continued to approve loans for applicants with qualifications similar to those of Plaintiffs. *See Hood v. Midwest Sav. Bank*, 95 F. App'x 768, 778 (6th Cir. 2004). Accordingly, Plaintiffs must plead allegations of fact that Outsource took an "adverse action" against them, defined as "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6).[4] On the other hand, "[t]o prove a violation of the spouse-guarantor rule, [a plaintiff] need only prove that [he or she] applied for credit, and [that] the creditor 'require[d] the signature of [the] applicant's spouse' if the applicant was individually creditworthy." *RL BB Acquisition*, 754 F.3d at 389 (quoting 12 C.F.R. § 202.7(d)(1)).

Plaintiffs argue that by suing Trew to collect Mares' debt because he was believed to be Mares' spouse, Defendant discriminated on the basis of marital status in violation of the ECOA. The court finds that Plaintiffs' ECOA claim fails as a matter of law for several reasons.

---

[4] The ECOA expressly excludes from the definition of "adverse action" any "refusal to extend additional credit under an existing credit arrangement *where the applicant is delinquent or otherwise in default*, or where such additional credit would exceed a previously established credit limit." *Id.* (emphasis added).

4

First, Plaintiffs have failed to allege any facts to establish that Defendant is a creditor under the plain meaning of the ECOA. Plaintiffs have not alleged that either Mares or Trew ever applied for credit with Defendant, or that their loan application was ever rejected by Defendant, or that Defendant "regularly extends, renews, or continues" credit to consumers, or that Defendant regularly arranges for the same transactions. Instead, Defendant is an ordinary debt collector that was "simply attempting collect on a debt that resulted from [Hillsdale's] decision to extend credit", which numerous courts have determined is excluded from the ECOA's definition of creditor. *See, e.g., Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 408 (6th Cir. 1998); *Anglin v. Merchants Credit Corp.*, Case No. C18-0507, 2018 WL 4584013, *7 (W.D. Wash. Sept. 25, 2018). Because Mares was never an applicant for credit from Defendant, either directly or indirectly, and Defendant was not an "assignee" who "participates in the decision to extend, renew, or continue credit," Defendant's conduct falls clearly outside the scope of the ECOA's protections. 15 U.S.C. § 1691a(e).

Second, Plaintiffs have failed to allege facts that would establish Trew's standing to sue under the ECOA. As an initial matter, Trew did not apply for credit from Defendant, nor was he discriminated against on the basis of his supposed marital status as an applicant. Plaintiffs nevertheless argue that Trew was treated as a spousal "guarantor" under Regulation B, qualifying him as an applicant for credit under the ECOA. (Dkt. No. 14 at 12.) However, Trew cannot qualify as a guarantor under the word's plain meaning; a guarantor is "one who makes a guarantee [by] promis[ing] to answer for a debt, default or miscarriage of another". Black's Law Dictionary (6th Ed. 1990). Plaintiffs have not plead that Trew ever signed a guaranty agreement, made an oral guaranty, or engaged in any conduct that would qualify him as a guarantor. As Defendant persuasively points out, "according to [P]laintiffs' own theory, Mr. Trew never

promised to do anything." (Dkt. No. 15 at 8.) Furthermore, even under Defendant's original assumption that Utah's family expense doctrine applied to Plaintiffs, Trew would only be jointly and severally liable for Mares' debt under Utah Code Ann. § 30-2-9, which is decidedly different from the contingent liability of a guarantor. Finally, the Spouse-Guarantor Rule is inapplicable here because Trew's signature was never required for Mares to apply for credit.

Third, the Complaint fails to plead any actionable "adverse action" as defined by 15 U.S.C. § 1691(d)(6). Regulation B properly and explicitly excludes "[a]ny action or forbearance relating to an account taken in connection with inactivity, *default, or delinquency* as to that account" from the definition of adverse action. 12 C.F.R. § 202.2(c)(2)(ii) (emphasis added). As with the plaintiffs in *Anglin*, Plaintiffs here "have not pointed to any provision in the ECOA that prohibits legal judgments which make spouses mutually liable for one another's debt." *Anglin*, 2018 WL 4584013 at *7. Because Defendant's underlying collection action was brought in connection with Mares' default or delinquency on her debt, it is thus expressly exempted under the ECOA. Plaintiffs cannot make the requisite demonstration that an adverse action has taken place under these facts to state a claim under the ECOA.

## II. Fair Debt Collection Practices Act Claim

The FDCPA prohibits misrepresentations in the course of debt collection, including false representations of the character, amount, or legal status of any debt. *See Ross v. RJM Acquisitions Funding*, 480 F.3d 493, 495 (7th Cir. 2007). Plaintiffs' Complaint limits their FDCPA claim to Defendant's allegedly false belief that Trew was liable for Mares' debt. However, only in Plaintiffs' Opposition brief did they explicitly clarify that ". . . Mr. Trew has never been legally married to Ms. Mares . . . ." (Dkt. No. 14 at 16.)

As with the ECOA claim, the court finds that Plaintiffs have failed to plead facts that could support a plausible FDCPA claim against Defendant. Plaintiffs' belated clarification that Mares and Trew are not actually married is contrary to Mares' express written representation to Hillsdale (and by extension to Defendant) when she sought credit by filling out the General Information form. Plaintiffs cannot now benefit under their FDCPA claim that Defendant falsely represented Trew's liability for Mares' debt when Mares was responsible for the misrepresentation to begin with. Furthermore, Plaintiffs' confusing and inconsistent claims in its Complaint (as well as in its Opposition brief) regarding whether or not Mares and Trew are (or have ever been) married are independently sufficient to allow this action to be dismissed. Plaintiffs cannot allege that Plaintiffs are "spouses" for purposes of their ECOA claim, while inconsistently suggesting under their FDCPA claim that Trew was not married to Mares within the same Complaint. (See Dkt. No. 2-2 at ¶¶ 14, 43, 63.)

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss for Failure to State a Claim (Dkt. No. 5) is hereby GRANTED. Plaintiffs' Motion to Strike and Motion for Leave to File Sur-Reply (Dkt. No. 17) as well as Plaintiffs' Motion for Leave to File First Amended Complaint (Dkt. No. 21) are consequently MOOT. This action is therefore DISMISSED with prejudice.

Signed May 23, 2019.

BY THE COURT

_____
District Judge Dee Benson